Filed 1/19/21  P. v. Corrales CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOHNNY LUIS CORRALES,<br><br>    Defendant and Appellant. | 2d Crim. No. B303207<br>(Super. Ct. No. VA134775)<br>(Los Angeles County) |

Johnny Luis Corrales appeals from the trial court's denial of his petition for resentencing.  (Pen. Code,[1] § 1170.95.) He contends the court erred when it summarily denied the petition because it:  (1) ignored section 1170.95's requirements, and (2) violated his constitutional right to counsel.  We disagree, and affirm.

---

[1] Statutory references are to the Penal Code.

FACTUAL AND PROCEDURAL HISTORY

In April 2014, brothers J.M. and P.M. were driving in Pico Rivera when Corrales and two other gang members stepped in front of their car.[2]  Corrales asked the brothers where they were from.  They replied that they did not "bang."  Corrales then asked if the brothers lived on a certain street in his gang's territory.  When they replied that they did, Corrales said, "Bust them."  As J.M. drove away, one of the gang members took a pistol from his waistband and shot at the fleeing vehicle.

The next day, P.M. left his house with another brother, F.M., and a friend, J.L., in the same vehicle J.M. had been driving the day before.  After they drove by a convenience store where gang members congregated, they heard a car approach.  P.M. yelled for F.M. and J.L. to get down.  Three gunshots rang out, one of which struck P.M.

P.M. lost consciousness as he drove away, and his car eventually crashed.  F.M. got out of the car and ran to a nearby hospital.  When he returned, police had arrived at the scene of the crash.  P.M. was dead.

The following month, Corrales admitted to a police informant that he was a gang member and had been involved in both of the April shootings.  He claimed that the victims were members of a local "tagging" crew that had ignored warnings from his gang.  He was not concerned about the gun that had

---

[2] Because Corrales pled guilty, we take the underlying facts of the case from the transcript of the preliminary hearing. Corrales stipulated that the transcript plus police reports and discovery could be used as the factual basis for his plea.  (See *People v. West* (1970) 3 Cal.3d 595, 600.)

been used to murder F.M. because his fellow gang members had disposed of it.

Corrales also told the informant that even if police recovered the gun used during the murder, he was not concerned about his fingerprints or DNA being found on it because he had not shot F.M. He also said that police had showed him a photograph of the car used in the shooting of F.M. and that that car belonged to his girlfriend. He worried that police would be able to identify him as the driver if they enhanced the photo.

Corrales later reiterated to the informant that he was concerned that police might be able to identify him as the driver of the car used in F.M.'s murder. He also told the informant where the murder had occurred. He identified the type of gun used to kill F.M., and said that F.M. had been shot in the torso from close range before he drove away and crashed his car.

One of Corrales's fellow gang members also spoke to a police informant. He told the informant that he was not concerned that police had found the car used in F.M.'s murder because the car belonged to Corrales's girlfriend, thus any DNA or fingerprints found inside was readily explainable. He was similarly unconcerned about police finding the gun used to shoot F.M. because he had wiped it down after the murder. He also claimed that police could not identify him as the shooter since he had only stuck his arm out the window of the car.

Corrales pled guilty to the first degree murder of P.M. (§§ 187, subd. (a), 189, subd. (a)) and the attempted murder of F.M. (§§ 664/187, subd. (a)) in 2018. He also admitted that he committed his crimes for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(C)). The trial court sentenced him to 25 years to life in state prison on the murder plus five years on the

3

attempted murder. It stayed the 10-year sentence enhancement on the gang allegation admission.

In September 2019, Corrales petitioned for resentencing pursuant to section 1170.95. In his petition, Corrales declared that: (1) the complaint filed against him allowed the prosecution to proceed on a felony murder theory or natural and probable consequences theory, (2) he pled guilty to first degree murder, (3) he could not now be convicted of first degree murder based on amendments to sections 188 and 189, and (4) he was not the actual killer, did not act with the intent to kill, and was not a major participant in the underlying felony who acted with reckless indifference to human life. Corrales also requested the appointment of counsel to assist him during the resentencing process.

The trial court summarily denied Corrales's petition. According to the preliminary hearing transcript, one of Corrales's fellow gang members shot and killed P.M. from the car Corrales was driving. The evidence was thus "clear" that Corrales was convicted as an aider and abettor. He could therefore still be convicted of murder under the changes to the law that had occurred since his conviction, and was ineligible for resentencing as a matter of law.

DISCUSSION

*Summary denial*

Corrales contends the trial court erred when it denied his section 1170.95 resentencing petition without appointing counsel. We disagree.

In 2018, the Legislature enacted Senate Bill No. 1437 (S.B. 1437) to "amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure

4

that murder liability is not imposed on a person who [was] not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) To accomplish these goals, S.B. 1437 redefined "malice" in section 188, and narrowed the classes of persons liable for felony murder under section 189. (Stats. 2018, ch. 1015, §§ 2-3.) It also added section 1170.95 to the Penal Code, which permits those convicted of felony murder or murder under a natural and probable consequences theory to petition to have their murder convictions vacated and to be resentenced on any remaining counts. (Stats. 2018, ch. 1015, § 4.)

A convicted defendant may petition for resentencing where the information allowed prosecutors to proceed under a felony murder theory or a natural and probable consequences theory, the defendant was convicted of murder, and the defendant could not now be convicted of murder under the amendments to sections 188 and 189. (§ 1170.95, subd. (a).) If the defendant files a petition declaring that they meet these requirements (*id.*, subd. (b)(1)(A)), the trial court undertakes a "two-step process" to determine whether they are eligible for relief (*People v. Offley* (2020) 48 Cal.App.5th 588, 596). First, the court determines "whether the defendant has made a 'prima facie showing [that they] "fall within the provisions" of the statute.' [Citation.]" (*Id.* at pp. 596-597, alterations omitted.) In making that determination, the court "may examine the record of conviction" (*id.* at p. 597), including the transcript of the preliminary hearing if the defendant stipulated to it as the factual basis for their guilty plea (*People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1166-1168 (*Nguyen*)). If that examination

5

reveals that the defendant does not fall within the provisions of section 1170.95 as a matter of law, the court may summarily deny the petition without appointing counsel.[3] (*Offley*, at p. 597.) But if the examination reveals that the defendant may be eligible for relief, the court must move to the second step of the process and appoint counsel (if requested) to assist the defendant in subsequent proceedings. (*Ibid.*)

_____

[3] Nearly all decisions published to date are in accord. (See *People v. Palacios* (2020) 58 Cal.App.5th 845, 857-859; *People v. Swanson* (2020) 57 Cal.App.5th 604, 617-618; *People v. Falcon* (2020) 57 Cal.App.5th 272, 277-279; *People v. Nunez* (2020) 57 Cal.App.5th 78, 90, fn. 5; *People v. Roldan* (2020) 56 Cal.App.5th 997, 1005; *People v. Jones* (2020) 56 Cal.App.5th 474, 484-485; *Nguyen*, *supra*, 53 Cal.App.5th at p. 1168; *People v. Galvan* (2020) 52 Cal.App.5th 1134, 1144, review granted Oct. 14, 2020, S264284; *People v. Gomez* (2020) 52 Cal.App.5th 1, 15-16, review granted Oct. 14, 2020, S264033; *People v. Soto* (2020) 51 Cal.App.5th 1043, 1054, fn. 10, review granted Sept. 23, 2020, S263939; *People v. Tarkington* (2020) 49 Cal.App.5th 892, 899-902 (*Tarkington*), review granted Aug. 12, 2020, S263219; *People v. Lee* (2020) 49 Cal.App.5th 254, 262-263, review granted July 15, 2020, S262459; *People v. Edwards* (2020) 48 Cal.App.5th 666, 673-675, review granted July 8, 2020, S262481; *People v. Torres* (2020) 46 Cal.App.5th 1168, 1178, review granted June 24, 2020, S262011; *People v. Verdugo* (2020) 44 Cal.App.5th 320, 327-333 (*Verdugo*), review granted Mar. 18, 2020, S260493; *People v. Cornelius* (2020) 44 Cal.App.5th 54, 58, review granted Mar. 18, 2020, S260410; *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1137-1140, review granted Mar. 18, 2020, S260598.) We disagree with our colleagues in the First District who have adopted a contrary view. (See *People v. Daniel* (2020) 57 Cal.App.5th 666, 673-674; *People v. Cooper* (2020) 54 Cal.App.5th 106, 118-123, review granted Nov. 10, 2020, S264684.)

The record of conviction here reveals that Corrales was ineligible for section 1170.95 relief as a matter of law because he was convicted of first degree murder as an aider and abettor. In 2014, our Supreme Court held that a defendant cannot be convicted of first degree murder on a natural and probable consequences theory. (See *People v. Chiu* (2014) 59 Cal.4th 155, 166.) Corrales pled guilty to first degree murder four years later. His conviction thus could not have been based on the natural and probable consequences doctrine.

As to first degree felony murder, the preliminary hearing transcript shows that Corrales admitted to a police informant that he drove the car from which his fellow gang member shot and killed P.M. But shooting at an occupied vehicle cannot be the basis for felony murder. (*People v. Chun* (2009) 45 Cal.4th 1172, 1200.) And Corrales identifies no other crime that could have provided the basis for a felony murder conviction. Nor does the preliminary hearing transcript reveal any such crime. Corrales was thus convicted of first degree murder as an aider and abettor, and is accordingly ineligible for resentencing as a matter of law. (*Nguyen, supra*, 53 Cal.App.5th at p. 1166-1168.)

Corrales counters that, under the principles set forth in *People v. Gallardo* (2017) 4 Cal.5th 120, the trial court was not permitted to rely on the preliminary hearing transcript to find him ineligible for section 1170.95 relief. *Gallardo* is inapposite. As our colleagues in Division 7 have explained, "[t]he Supreme Court in *Gallardo* held [that] a trial court may not rely on the preliminary hearing transcript to determine the nature of [a] defendant's prior conviction for purposes of sentencing where the record of conviction did not show whether the . . . conviction under former section 245, subdivision (a)(1), was of assault with a

7

deadly weapon or assault with force likely to produce great bodily injury." (*People v. Perez* (2020) 54 Cal.App.5th 896, 907, review granted Dec. 9, 2020, S265254.) "The [*Gallardo*] defendant had pleaded guilty to the prior assault, but she did not admit whether she had used a deadly weapon." (*Ibid.*) The Supreme Court thus concluded that "the trial court had engaged in improper judicial factfinding in violation of the Sixth Amendment . . . '[b]ecause the relevant facts were neither found by a jury nor admitted by defendant when entering her guilty plea.'" (*Id.* at pp. 907-908.)

"In contrast to the sentencing at issue in *Gallardo*, 'the retroactive relief petitioners are afforded by [S.B.] 1437 is not subject to Sixth Amendment analysis.'" (*Perez*, *supra*, 54 Cal.App.5th at p. 908, alterations omitted.) "Rather, the Legislature's changes constituted an act of lenity that does not implicate . . . petitioners' Sixth Amendment rights.' [Citations.]" (*Ibid.*, alterations omitted.) Accordingly, "*Gallardo* did not prohibit the [trial] court from considering the preliminary hearing transcript as part of [Corrales's] record of conviction in evaluating whether [he] had made a prima facie showing he was entitled to relief under section 1170.95." (*Ibid.*)

We also reject Corrales's claim that the trial court's reliance on the preliminary hearing transcript to determine whether he was eligible for resentencing violated the rule against hearsay. While we agree that the transcript contained hearsay (*People v. Reed* (1996) 13 Cal.4th 217, 224), and that Corrales's stipulation to it as part of the factual basis for his plea did not constitute an adoptive admission that waived any hearsay issue (see *People v. Thoma* (2007) 150 Cal.App.4th 1096, 1104), reliable hearsay is admissible in post-trial proceedings (*People v.*

8

*Sledge* (2017) 7 Cal.App.5th 1089, 1095). Preliminary hearing transcripts are reliable hearsay. (*Reed*, at p. 223.)

*Right to counsel*

Alternatively, Corrales contends the trial court's summary denial of his resentencing petition violated his right to counsel and due process. We again disagree.

A criminal defendant has the right to counsel at all critical stages of the proceedings. (*Gardner v. Appellate Division of Superior Court* (2019) 6 Cal.5th 998, 1004-1005 (*Gardner*).) Critical stages are those "proceedings in which the [defendant] is brought in confrontation with the state, where potential substantial prejudice to the [defendant's] rights inheres in the confrontation, and where counsel's assistance can help to avoid that prejudice." (*Ibid.*) Included among these proceedings are the trial and initial appeal. (*Pennsylvania v. Finley* (1987) 481 U.S. 551, 555.) The right to counsel also applies in resentencing proceedings. (*People v. Rouse* (2016) 245 Cal.App.4th 292, 296, 299-301.)

But it does not apply where, as here, a postconviction petition does not state a prima facie case for relief. (*People v. Shipman* (1965) 62 Cal.2d 226, 232.) That is because the trial court's role upon receipt of such a petition is "simply to decide whether the [defendant] is ineligible for relief as a matter of law, making all factual inferences in [their] favor." (*Verdugo, supra*, 44 Cal.App.5th at p. 329, review granted.) The act of making that decision cannot be deemed a critical stage of the proceeding because it creates no "confrontation with the state . . . where counsel's assistance [could] help." (*Gardner, supra*, 6 Cal.5th at pp. 1004-1005.) The court does not exercise its discretion in any way, but instead makes a decision as a matter of law. Because

9

the presence of counsel would not contribute to that purely legal exercise, a defendant's right to counsel is not implicated.  (Cf. *People v. Howard* (2020) 50 Cal.App.5th 727, 740 [section 1170.95 does not implicate right to jury trial].)

We also reject Corrales's assertion that due process requires appointment of counsel at the initial prima facie determination.  Due process requires appointment of counsel in postconviction proceedings only "if a petition attacking the validity of a judgment states a prima facie case leading to issuance of an order to show cause."  (*In re Clark* (1993) 5 Cal.4th 750, 780, superseded by statute on another point as stated in *Briggs v. Brown* (2017) 3 Cal.5th 808, 841-842.)  That did not happen here.

Moreover, due process is implicated when the state attempts to deprive a defendant of some liberty interest.  (*Hewitt v. Helms* (1983) 459 U.S. 460, 466, abrogated on another point by *Sandin v. Conner* (1995) 515 U.S. 472, 483, fn. 5.)  But Corrales is "categorically ineligible for relief under section 1170.95." (*Tarkington, supra*, 49 Cal.App.5th at p. 908, review granted.) He thus had "no liberty interest in the appointment of counsel, and . . . no expectation that counsel would be appointed for him." (*Ibid.*)

10

## DISPOSITION

The trial court's order denying Corrales's petition for resentencing pursuant to section 1170.95, entered November 5, 2019, is affirmed.

<u>NOT TO BE PUBLISHED.</u>

TANGEMAN, J.

We concur:

GILBERT, P. J.

PERREN, J.

Raul A. Sahagun, Judge

Superior Court County of Los Angeles

_____

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Kristin J. Inberg and J. Michael Lehmann, Deputy Attorneys General, for Plaintiff and Respondent.